## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

AARON P. GARCIA, Personal
Representative of the Estate of CATARINA
C. GARCIA,

        Plaintiff,                                    Civ. No. 02-104 MV/WDS

vs.

WAL-MART STORES, INC., BESAM
AUTOMATED ENTRANCE SYSTEMS,
INC., a/k/a BESAM NORTHEAST, INC.,
and CONTINENTAL AUTOMATIC
DOORS OF EL PASO, INC.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants Wal-Mart and Besam

Automated Entrance System's Joint Motion to Exclude Videotape Images, filed January 30, 2004

**[Doc. No. 156]**; Defendant Wal-Mart's Motion to Prohibit the Testimony of Donald C. Berman,

P.E., filed April 30, 2003 **[Doc. No. 115]**; Defendant Besam's Motion to Exclude Evidence of

Other Alleged Door Malfunctions, filed October 3, 2003 **[Doc. No. 150]**; and Defendant Wal-

Mart's Motion to Exclude Evidence of Subsequent Remedial Measures, filed December 23, 2002

**[Doc. No. 91]**.  The Court, having considered the motions, briefs, relevant law and being

otherwise fully informed, finds that the motions will be **GRANTED in part.**  As to the remaining

motions, the Court declines to render a decision at this time and shall address these motions at the

Pretrial Conference to be held on April 13, 2004.

## BACKGROUND

This products liability action arises from events that transpired at the Wal-Mart store in Alamagordo, New Mexico on July 10, 1999.  Catarina Garcia was entering the store when the automatic doors allegedly malfunctioned, closing on her or her walker and causing her to fall. Mrs. Garcia suffered injuries as a result of the fall and, on July 19, 1999, passed away.  Plaintiff, the appointed personal representative of Mrs. Garcia's estate, brought the instant wrongful death suit, alleging that Mrs. Garcia's death was caused by Defendants' negligence in installing, maintaining and repairing the doors at the Alamagordo Wal-Mart (also referred to as Store 1306).

Defendants have filed various motions in limine, each of which is addressed herein.

## DISCUSSION

### A.        Motion to Exclude Videotape Images

Defendants have moved to exclude videotaped images of Mrs. Garcia's fall obtained from security cameras, citing Rule 403 of the Federal Rules of Evidence.  Rule 403 permits exclusion of relevant evidence if the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time ...."  FED. R. EVID. 403.  However, having viewed the videotape and still images downloaded from the videotape, the Court finds that the images are properly excluded pursuant to Rules 401 and 402.

Rule 402 states that only relevant evidence is admissible, and Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  FED. R. EVID. 401.  The disputed videotape contains no imagery that

meets this standard.

The surveillance system at the Alamagordo Wal-Mart was connected to sixteen cameras, each of which filmed different locations inside and outside the store.  The video system did not tape continuous footage from each camera, but randomly skipped from one camera to another and recorded only those static images.  In addition, each recorded image was only 1/10 of a second long (i.e., the system captured ten different frames or images each second).  The result is a haphazard recording of stilted pictures of various different locations and not the continuous "real time" recording attained through a typical, single camera videorecorder.

One of the store's sixteen cameras - Camera 2 - was taping the vestibule area adjacent to the automatic doors where Mrs. Garcia fell.  The focal point of the image is the vestibule, not the doors themselves.  Only part of the particular door that purportedly caused Mrs. Garcia's fall can be seen in the videotaped images; the remaining portions fall outside the image frame.

While viewing both the tape and the still photos, the Court simply could not discern any images of a woman falling or doors closing on a person.  As explained above, the surveillance system did not record continuous, streaming images.  Defendant states that the relevant images are those recorded at 12:17:01, 12:17:03, 12:17:04 and 12:17:07.  Because of the system's random taping method, the intervening time intervals were not captured on film.  Though Plaintiff contends the relevant footage spans a 30-second period, he does not specify what that period is.  Even if a larger time frame than that suggested by Defendants is considered, the film has captured only disconnected and out-of-focus images that shed no light, one way or another, on what happened during the course of Mrs. Garcia's fall.  As a result, Defendants' motion to exclude the videotape and still images downloaded from the tape will be granted.

## B.    Motion to Prohibit Testimony of Plaintiff's Proposed Expert Witness, Donald C. Berman

Plaintiff intends to call Donald C. Berman as an expert witness to testify about the cause of the door's malfunction and reconstruct what happened during the incident.  Mr. Berman is an engineer licensed in California whose speciality is quality engineering, a field that includes failure analysis.  He provided the parties first with a Preliminary Failure Analysis Report and later with an Interim Failure Analysis Report.  Mr. Berman's conclusions, as expressed in his deposition testimony and his Preliminary Report, include the following:[1]

< that Wal-Mart did not institute an effective "Failure Recurrence Prevention System" or otherwise reduce or eliminate the dangers from the doors by taking steps such as, but not limited to, placing rails outside or inside the door, using various daily walk-through tests, or replacing the doors altogether;

< Defendant Besam's Eye-Cue motion and presence detecting system, which was installed in the Alamagordo Wal-Mart's sliding doors, suffered from three design defects: (1) the system was insensitive to slowly moving pedestrians who walked at a rate of six inches-per-second; (2) the system was insensitive to pedestrians wearing dark clothing that

---

[1]In their briefs, the parties also discuss the admissibility of the following notations from Mr. Berman's Preliminary Report:  (1) that Mr. Berman is not aware of any documentation showing that Wal-Mart conducted a daily, six inches-per-second walk-through test of the door; (2) that associates working at the Alamagordo Wal-Mart told an investigator they had known of problems with the automatic door before Mrs. Garcia's accident; and (3) that because Wal-Mart has been sued at least 40 times for injuries resulting from swinging Besam doors and has received at least 90 complaints from customers allegedly injured by swinging Besam doors, it was on notice of the sliding Besam doors' dangerousness.  However, admissibility of these matters does not turn on either Rule 702 or a *Daubert* analysis since none are expressions of scientific or other expert testimony.  Accordingly, the Court's ruling on Defendant's *Daubert* motion has no bearing on whether these statements ought to be excluded, and the parties are free to raise objections to these statements as appropriate.

Defendants also request exclusion of Mr. Berman's conclusion that the presence sensor and motion detectors in the sliding Besam doors that allegedly injured Mrs. Garcia were changed after her accident, on the grounds any such change was a subsequent remedial measure.  As the parties have briefed this matter fully in a separate motion, the Court will rule on that objection in a separate opinion and order.

absorbed infrared rays instead of reflecting them; and (3) the system's sensitivity may have been diminished if certain types of lighting ballasts had been in place at the time of the accident;

&lt;   that Besam's walk-through test procedure was inadequate if it did not call for the use of black, non-reflective clothing.

Defendants have moved to prohibit Mr. Berman's report and testimony on the grounds that they are both unreliable and irrelevant under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Rule 702 provides as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert*, the Supreme Court held that Rule 702 requires trial judges to admit scientific evidence only if it is both relevant and reliable.  In *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court clarified that all expert testimony, not just testimony based on science, must meet these two conditions.  The proponent of the expert testimony has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.  *Bourjaily v. United States*, 483 U.S. 171 (1987).

In evaluating the reliability of expert testimony, the trial court must determine "whether the reasoning or methodology underlying the testimony is scientifically valid."  *Daubert*, 509 U.S. at 592-93.  In *Daubert*, the Supreme Court set forth a non-exhaustive set of factors for courts to consider, namely:  (1) whether the expert's technique or theory can be or has been tested; (2)

-5-

whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. *Id.* at 593-94.

Subsequent rulings have made clear that courts may consider other, if not altogether different factors in evaluating the reliability of proffered expert testimony. As the Tenth Circuit has stated, the purpose of the *Daubert* analysis "is not to measure every expert by an inflexible set of criteria." *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1243 (10th Cir. 2000). The inquiry is properly understood as a "flexible and commonsense undertaking in which the trial judge is granted 'broad latitude' in deciding both how to determine reliability as well as in the ultimate decision of whether the testimony is reliable." *Id.* (citing *Kumho*, 526 U.S. at 141-42). Consequently, every "plaintiff need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). "Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Id.*

Defendant Wal-Mart's objections to the reliability of Mr. Berman's testimony are namely that (1) his theories have not been tested or published, (2) he could not identify violations of any applicable industry standards, and (3) his opinions are based on data about swinging, not sliding doors. While neither publication in professional journals or industry-wide acceptance of an expert's theories is necessary to establish reliability, the tests underlying and other bases for Mr. Berman's opinions bring the integrity of his conclusions into question. The Court need not

address whether the expert testimony at issue meets *Daubert*'s relevance requirement because the testimony fails to meet the reliability prerequisite for the reasons outlined below.

Mr. Berman's opinion that Wal-Mart did not take steps to remedy door malfunctioning is based on the fact that forty lawsuits stemming from door injuries were filed against Wal-Mart between 1994 and 1998.  (Depo. at 114.)  As Mr. Berman acknowledges, these lawsuits all involved complaints about the performance of Besam's swinging doors, not the sliding doors at issue in this litigation.  Yet these facts simply do not support the conclusion that Wal-Mart did not institute adequate safeguards with regard to its sliding doors.  Even assuming that the number of swinging door lawsuits alone is proof of Wal-Mart's failure to take action with regard to those doors, such a fact does not support the conclusion that it also did not act in response to any purported malfunctioning of another type of doors.  Such an inferential leap is even more illogical given that, as Mr. Berman admits, he knows of no complaints or lawsuits brought against Wal-Mart involving Besam sliding doors.  (Depo. at 115-17.)  While Mr. Berman's background in engineering and failure analysis may qualify him to discuss any actions that were in fact taken or that could have been taken, his expertise does not allow him to assume facts that do not exist and have no foundation.

Next, the Court must evaluate the reliability of Mr. Berman's opinions that Besam sliding doors, and the Eye-Cue motion and presence sensor system in particular, carry three design defects and that any walk-through test for these doors that did not call for use of non-reflective clothing was inadequate.  When asked whether he had *ever* tested, installed, serviced or maintained that system, Mr. Berman initially answered in the negative.  (Depo. at 42-43.)  However, later in the deposition, Mr. Berman stated that he had been retained in the past to work

on three or four Besam sliding door cases and had conducted tests for sensitivity to pedestrians in dark clothes.  (Depo. at 78, 80, 84.)  When pressed to identify those cases, Mr. Berman named two cases but stated that he could not be certain that those were the correct ones.  (Depo. at 79.) Although in its Second Set of Interrogatories and Request for Production, Defendant Besam asked Plaintiff to furnish additional information and documentation related to this prior testing of the Eye-Cue system and his involvement in any litigation involving the same, Plaintiff failed to object or comply with the discovery request.  Instead, Plaintiff answered that Mr. Berman still could not recall the name of the case and that requiring him to search through his 700 case files would be unduly burdensome.  Even though Magistrate Judge William Schneider found this response unacceptable and issued an Order **[Doc. No. 138]** compelling Plaintiff to respond, Plaintiff did not.  In light of Plaintiff's failure to comply with the discovery order, the Court will prohibit Plaintiff from introducing or otherwise relying on any evidence related to testing or use of either the Eye-Cue system or Besam sliding doors by Mr. Berman, in connection with other cases.

When asked whether he ever had tested the Eye-Cue system for purposes of this case, in relation to his theories about sensitivity to individuals wearing dark clothes or walking at a rate of six inches-per-second, Mr. Berman said he had not.  (Depo. at 98-100.)  He also stated he had not conducted tests to check for any effect that lighting ballasts might have had on the Eye-Cue system.  (Depo. at 102.)

Although an expert need not have firsthand knowledge of a matter and may offer opinions based instead on experience and training, Mr. Berman's background fails to show that his opinions are sufficiently reliable under Rule 702 and *Daubert*.  For instance, an expert may share conclusions that are based on experimental, statistical, or other scientific data, *e.g., Clark v.*

*Takata Corp.*, 192 F.3d 750, 758 (7th Cir. 1999), or that are based on a plaintiff's account of

events that the expert did not observe personally, *Tormenia v. First Investors Realty Co., Inc.*,

251 F.3d 128, 135 (3d Cir. 2000).  Thus, while Mr. Berman may offer expert testimony on

problems associated with Besam sliding doors by relying on his engineering expertise to decipher

reports or accidents involving those doors, he has not availed himself of any such information:  he

had not read any materials discussing the Besam sliding doors or problems related to them (Depo.

at 143-44) nor spoken to any eye-witnesses to the accident (Depo. at 87) before he came to the

conclusions conveyed in his deposition.

 Ultimately, Mr. Berman's conclusions about the Besam sliding doors at issue in this case

are mostly extrapolations from his knowledge of Besam swinging doors and related litigation.[2]

Yet he himself admits that he does not know whether the two types of doors use the same, or

even comparable, motion and presence sensor technology.  (Depo. at 83-84.)  Although Plaintiff

emphasizes that Mr. Berman's opinions are about all technology used in infrared sensors and that

both swinging and sliding doors use infrared sensors, Mr. Berman stated in his deposition that he

---

[2]In his Preliminary Report, Mr. Berman states as follows

 The Besam motion and presence detecting system was insensitive to pedestrians
who wore dark clothing that absorbed infra-red rays rather than reflecting them
and this was a design defect.  This problem is exacerbated with senior citizens of
frail stature.  Besam instituted a recall of Besam presence sensors manufactured for
swinging doors from 1997 through 1999 because of their diminished sensitivity to
certain clothing materials.  It may very well be that the infra-red presence detectors
for sliding doors utilized the same detector and emitter cards as did the presence
detectors for swinging doors, or that although the cards may be different, the infra-
red emitters and detectors used on both swinging and sliding door systems are the
same, or even if not of identical part numbers, have the same sensitivity problems.

Berman's Prelim. Report at 4, Exh. A to Suppl. to Pl's Br. **[Doc. No. 121]**.

did not know whether such technology varied when used on different doors.  (Depo. at 42.)

Without any basis for believing that the two types of doors are in some way analogous and

without any firsthand testing of the sliding doors or examination of studies, reports or other

materials recounting problems with such doors, "there is simply too great an analytical gap

between the data and the opinion proffered" in this case to meet the requirements of Rule 702 and

*Daubert.  Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  "[N]othing in either *Daubert* or

the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected

to existing data only by the ipse dixit of the expert." *Id.*  Accordingly, Mr. Berman will be

prohibited from testifying about the alleged design defects, as well as the purported deficiency in

Besam's recommended walk-through test procedure.

  **C.**  **Remaining Motions in Limine**

  Defendant Besam also has filed a motion to exclude evidence of other alleged door

malfunctions, and Defendant Wal-Mart has moved to exclude any evidence of subsequent

remedial measures.  The Court will defer ruling on these motions until the Pretrial Conference.

         **CONCLUSION**

  **IT IS THEREFORE ORDERED** that Defendants Wal-Mart and Besam Automated's

Joint Motion to Exclude Videotape Images, filed January 30, 2004 **[Doc. No. 156]** is hereby

**GRANTED**.  Defendant Wal-Mart's Motion to Prohibit the Testimony of Donald C. Berman,

P.E. **[Doc. No. 115]** is also hereby **GRANTED**.

  **IT IS FURTHER ORDERED** that Defendant Besam's Motion to Exclude Evidence of

Other Alleged Door Malfunctions **[Doc. No. 150]** and Defendant Wal-Mart's Motion to Exclude

Evidence of Subsequent Remedial Measures **[Doc. No. 91]** are hereby held in abeyance until the

Pretrial Conference.


Dated this 30th day of March, 2004.


_____
MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE


Attorney for Plaintiff:
Michael W. Lilley
Rebecca S Walsh

Attorney for Defendants:
James P. Sullivan
Paul C. Collins
Paul R. Koller
Frank N. Chavez